UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| WHITNEY SMITH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 11-56-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SMITHKLINE BEECHAM CORP., et al., | ) | **& ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Diligent investigation of facts and thorough legal briefing are common—indeed, expected—in federal court. Less common is when a party's own diligence fatally undermines its chances of success. But that is exactly what has happened to defendant SmithKine Beecham's efforts to establish federal jurisdiction over this case. SmithKline has gathered a significant amount of evidence establishing that the non-diverse defendant, Dr. Tom McGuire, did not prescribe Paxil for plaintiff Whitney Smith during the first trimester of her pregnancy. According to SmithKline, this evidence, in conjunction with scientific evidence demonstrating that ingestion of Paxil after the first trimester could not have caused her son's birth defects, establishes that Smith has no claim against Dr. McGuire. SmithKline therefore asks the Court to ignore Dr. McGuire's his non-diverse citizenship and exercise jurisdiction over the case under the doctrine of fraudulent joinder. But this argument, if accepted, would also defeat Smith's claims against SmithKline—it would conclusively establish that Paxil did not cause her son's injuries. Therefore, under the "common defense rule," it is an attack on the merits of Smith's case as a whole, not on the propriety of Dr.

McGuire's joinder.  Because SmithKline has not shown that Dr. McGuire was fraudulently joined, this Court lacks jurisdiction over this case, and Smith's motion to remand is granted.

## BACKGROUND

Whitney Smith gave birth to two twin boys on May 4, 2009.  They were five weeks premature.  One of the twins had serious health problems, including congenital heart defects and respiratory difficulties.  He underwent two open heart surgeries during the first three months of his life to correct these defects.

Smith believes that her use of Paxil (or its generic form, paroxetine) during her pregnancy caused her son's health problems.  On May 4, 2010, she filed suit in Kentucky state court against SmithKline Beecham, the maker of Paxil, and Dr. Tom O. McGuire, her gynecologist.  *Smith v. SmithKline Beecham Corp.*, No. 10-73, R. 1-1 at 3 ("Complaint").  Smith alleged that Dr. McGuire prescribed her Paxil during her first trimester to help with sleeping problems.  Complaint ¶ 19.  One month later, SmithKline removed the suit to this Court.  Because Dr. McGuire, like Smith, is a citizen of Kentucky, the case lacked complete diversity.  Therefore, SmithKline could only establish federal jurisdiction by demonstrating that Smith had fraudulently joined Dr. McGuire for the purpose of defeating diversity.  *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  SmithKline argued that Smith did not have a colorable claim against Dr. McGuire because there was no evidence showing that he prescribed her Paxil during her first trimester.  Smith filed a motion to remand, which the Court granted on August 30, 2010.  The Court held that Dr. McGuire had not been fraudulently joined because there was a factual dispute as to whether he had given

Smith a first-trimester Paxil prescription and all factual disputes must be resolved in favor of remand. *Smith*, No. 10-73, R. 39 at 9-10.

The case went back to state court. On December 22, 2010, Smith filed an amended complaint. The crux of her allegations against both SmithKline and Dr. McGuire remained the same, although she removed the reference to the first trimester in her allegations against Dr. McGuire. The amended complaint simply alleges that Dr. McGuire prescribed Smith Paxil at some point "[d]uring her pregnancy." Amended Complaint, R. 1-2 at 68, ¶ 20. In the meantime, SmithKline did its homework, collecting evidence to show that Smith did not receive a first-trimester Paxil prescription from Dr. McGuire. Smith conceived her twins on or around September 18, 2008, which means that her first trimester (lasting approximately twelve weeks) ended around December 11, 2008. But, according to SmithKline, all of the available evidence shows that Smith did not receive a prescription for Paxil (or paroxetine) from Dr. McGuire prior to February 5, 2009—well beyond the end of her first trimester. This evidence is compelling and includes the following:

- In an interrogatory, SmithKline asked Smith to list all of the pharmacies from which she obtained Paxil or paroxetine. R. 1-26 at 9. Smith identified three pharmacies—Walmart, Economy, and Citizens. *Id.* SmithKline then issued subpoenas to fifteen of these pharmacies' locations in the area where Smith worked and lived. Only two pharmacies—Economy and Citizens—had records for Smith, and neither had a prescription in Smith's name for Paxil or paroxetine from earlier than February 5, 2009. R. 1-19. Employees from each pharmacy confirmed that neither had any record of a first-trimester Paxil prescription for Smith. R. 1-32 at 32; R. 1-33 at 17.

- In his deposition, Dr. McGuire testified that he only wrote one Paxil prescription for Smith, and that he wrote it on February 5, 2009. R. 1-16 at 25-26.

- In response to SmithKline's discovery request that Smith produce all Paxil prescription bottles in her possession, Smith only produced one, which had an original prescription date of February 5, 2009. R. 1-28

- During her deposition, Smith testified that she only had one conversation about Paxil with Dr. McGuire, and that Dr. McGuire handed her the Paxil prescription immediately after that conversation. R. 1-14 at 265-70. The only Paxil prescription signed by Dr. McGuire that was produced in the course of discovery was the February 5, 2009, prescription, which provided for five refills. R. 1-21.

- Smith visited Buchanan General Hospital on November 8, 2008—in the middle of her first trimester. The admissions paperwork asked Smith to list all medications she was currently taking, and Smith only listed prenatal vitamins. She did not list Paxil or paroxetine. R. 1-23.

In fact, the only evidence in the record showing that Smith received a first-trimester Paxil prescription from Dr. McGuire is her own deposition testimony. Smith specifically testified that Dr. McGuire prescribed her Paxil in "late October, early November" of 2008. R. 1-14 at 131. She admitted during her testimony that she could not produce any records of the October/November 2008 prescription or specifically identify the pharmacy at which she had the prescription filled. *Id*. at 132-33.

Armed with this evidence, and evidence that the kinds of defects from which Smith's son suffers could only have been caused by ingestion of Paxil during the first trimester, SmithKline removed the case to this Court for a second time on April 14, 2011. Smith filed a motion to remand, R. 10, to which SmithKline responded, R. 14, and Smith replied, R. 16. The Court held oral argument on Smith's motion to remand on June 28, 2011. Both parties filed supplemental briefs after oral argument. R. 23, 24, 25.

## DISCUSSION

This is SmithKline's argument in a nutshell: Aside from Smith's own uncorroborated deposition testimony, all of the evidence shows that Dr. McGuire did not prescribe her Paxil during her first trimester. And, because it is supposedly a scientific impossibility that Paxil use after the first trimester could have caused the congenital heart defects from which Smith's son suffers (a baby's heart is already fully formed by the end of the first trimester), Smith cannot show that Dr. McGuire's prescription caused her son's injuries. Therefore, Smith does not have a colorable cause of action against Dr. McGuire. He has thus been fraudulently joined, and the Court should disregard his non-diverse citizenship and exercise jurisdiction over the case.

Resolving the merits of this argument would be a complicated affair. Although the Sixth Circuit recognizes the doctrine of fraudulent joinder generally, *see Coyne*, 183 F.3d at 493; *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994), it has provided very little guidance on how courts should resolve fact-intensive arguments like those that SmithKline advances. SmithKline's argument is not, after all, that Smith has failed to *plead* a cause of action against Dr. McGuire—Smith plainly alleges in her complaint that her son's "cardiac defects . . . were caused by Paxil, which [she] ingested during her pregnancy pursuant to a prescription given by Dr. McGuire." Amended Complaint ¶ 39. Rather, SmithKline invites the Court to "pierce the pleadings"—a practice the Sixth Circuit has neither explicitly blessed nor forbidden, but which other circuits allow, *see, e.g.*, *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)—and consider affidavits,

depositions, and other evidence to determine whether Smith's claims against Dr. McGuire are supported by the facts.

Deciding whether to pierce the pleadings would be just the tip of the iceberg.  If the Court did so, it would then have to determine the proper standard to apply.  How overwhelmingly must the evidence demonstrate the infirmity of Smith's claims against Dr. McGuire?  Again, the Sixth Circuit has provided little guidance, stating the standard with the question-begging formulation:  "the removing party must present *sufficient* evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law."  *Coyne*, 183 F.3d at 493 (emphasis added).  Courts within this circuit have said that the standard for establishing fraudulent joinder is even higher than the standard for prevailing on a motion to dismiss under Rule 12(b)(6).  *See Cordle v. Merck & Co.*, 405 F. Supp. 2d 800, 803 (E.D. Ky. 2005).  But it is unclear how the Rule 12(b)(6) inquiry, which a court performs based solely on the complaint, would apply to a fraudulent joinder analysis involving depositions, affidavits, and other pieces of evidence.  To make matters worse, the guidance from other circuits is decidedly contradictory.  Some circuits have said that the inquiry is "similar to a motion for summary judgment," *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004), while other circuits have said that the inquiry is "far different from . . . summary judgment," *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990).

Untangling this Gordian knot is a task for another day.  Even if SmithKline were to successfully demonstrate that Smith did not receive a first-trimester Paxil prescription from Dr. McGuire and that only a first-trimester prescription could have caused her son's health

problems, it still would not suffice to establish fraudulent joinder.  True, this showing would mean that Smith cannot prevail on her claims against Dr. McGuire.  But this same showing would also vitiate Smith's claims against SmithKline.  It would defeat Smith's entire case because it would conclusively establish that Paxil did not cause her son's birth defects. SmithKline's argument thus runs afoul of the "common defense rule."

This is the common defense rule, as stated by the en banc Fifth Circuit:  "When the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing [to establish fraudulent joinder] has not been made." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (en banc).  The Third and Ninth Circuits have adopted the same rule, *see Boyer*, 913 F.2d at 113; *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044-45 (9th Cir. 2009), as have numerous district courts, *see, e.g.*, *Poole v. Am. Int'l Group, Inc.*, 414 F. Supp. 2d 1111, 1116-17 (M.D. Ala. 2006); *Brooks v. Merck & Co.*, 443 F. Supp. 2d 994, 1003 (S.D. Ill. 2006); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 324 F. Supp. 2d 288, 305-06 (D. Mass. 2004).  And the Seventh Circuit, in an opinion by Judge Posner, has recognized the common defense rule as an "exception" to fraudulent joinder (which itself is an exception to the complete diversity requirement). *Walton v. Bayer Corp.*, --- F.3d ----, No. 10-3462, 2011 WL 1938428, at *3, 5 (7th Cir. May 23, 2011).

The genesis of the common defense rule is the Supreme Court's decision in *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146 (1914).  That case involved a Kentucky citizen who died in a railroad accident.  The administrator of his estate sued the

railroad company (a citizen of Virginia) as well as the engineer and fireman who had been operating the train (citizens of Kentucky) in state court. The railroad company tried to remove the case to federal court, arguing that the non-diverse engineer and fireman had been fraudulently joined because the evidence showed that they had not acted negligently, and thus the plaintiff could not recover against them. *Id*. at 149-50, 153. The Court rejected that argument. The only way that the railroad company could have been liable to the plaintiff was through vicarious liability for the negligence of its employees. Therefore, if the engineer and the fireman were not liable to the plaintiff, neither was the railroad company. Because the railroad company's argument for fraudulent joinder, if accepted, would have defeated the plaintiff's claims against *all* of the defendants, not just the non-diverse ones, the Court held that "the showing manifestly went to the merits of the action as an entirety, and not to the joinder." *Id*. at 153. Stated differently, because the argument "indicated that the plaintiff's case was ill founded as to all the defendants," it did not "compel the conclusion" that the non-diverse defendants "were wrongfully brought into a controversy which did not concern them." *Id*.

*Cockrell* was part of the line of cases from the turn of the last century in which the Supreme Court created, and refined, the fraudulent joinder doctrine. *See* James M. Underwood, *From Proxy to Principle: Fraudulent Joinder Reconsidered*, 69 Alb. L. Rev. 1013, 1034-44 (2006). Having announced that a plaintiff may not defeat a diverse defendant's right of removal by joining a non-diverse defendant for the sole purpose of destroying diversity, *see Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 185-86 (1907), the Court added an important, and logical, caveat in *Cockrell*. As the doctrine's

name implies, fraudulent joinder is about fraud. It stands as a bulwark against plaintiffs who intentionally manipulate federal jurisdiction by suing non-diverse defendants who have no real connection to the case for the sole purpose of defeating diversity. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). Of course, unearthing a plaintiff's subjective fraudulent intent can be quite difficult, so most courts allow a defendant to establish fraudulent joinder in one of two ways—either by demonstrating "outright fraud" in the plaintiff's complaint against the non-diverse defendant or by showing that the plaintiff has "no possibility" of prevailing against the non-diverse defendant. *See Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (citation and quotation marks omitted). The no-possibility-of-recovery avenue to establishing fraudulent joinder is not a freestanding test, however. Rather, it is a "proxy" for establishing the plaintiff's fraudulent intent. *See* Note, *Fifth Circuit Establishes "Common Defense" Exception to Fraudulent Joinder Doctrine*, 118 Harv. L. Rev. 1086, 1090 (2005); *Wright v. Metro. Life Ins. Co.*, 74 F. Supp. 2d 1150, 1154 (N.D. Ala. 1999). If the plaintiff has no hope of recovering against the non-diverse defendant, the court infers that the only possible reason for the plaintiff's claim against him was to defeat diversity and prevent removal. When, however, the plaintiff's claims against the non-diverse defendant fail for the same reason that his claims against the other defendants fail, the no-possibility-of-recovery inquiry no longer functions as a proxy for fraudulent intent. Instead, it merely demonstrates that "the plaintiff's case [is] ill founded as to all the defendants," *Cockrell*, 232 U.S. at 153—a quintessential merits determination that belongs in the state court.

Thus, the insight at the heart of *Cockrell* is this:  If the plaintiff has no hope of prevailing against the non-diverse defendant and only the non-diverse defendant, the sole reason for that claim must have been to defeat diversity and prevent removal.  If, however, the plaintiff has no hope of prevailing against *any* of the defendants because they all share a common defense, there is nothing wrong with the joinder of the non-diverse defendant; rather, the problem is with the plaintiff's entire case.  *See Smallwood*, 385 F.3d at 574.  Applying the principle that *Cockrell* announced—which has been dubbed the "common defense rule"—courts have held that there is no fraudulent joinder where the plaintiff's claims against both the diverse and non-diverse defendants fail for the same reason, such as a contractual release that benefits all defendants, *Boyer*, 913 F.2d at 112-13, federal preemption of the plaintiff's state-law claims against all defendants, *Smallwood*, 385 F.3d at 575-76, or a learned intermediary defense equally available to all defendants, *Brooks*, 443 F. Supp. 2d at 1003.

Although the Sixth Circuit has not yet addressed the common defense rule, both *Cockrell* and the rule's logical force strongly recommend adopting it.  A simple hypothetical illustrates why the rule makes sense.  Imagine that Lesley (a citizen of Kentucky) is injured in a car accident.  She files a lawsuit against two other drivers—Dan (a citizen of Kentucky) and Omar (a citizen of Texas)—in Kentucky state court, claiming that they were both involved in the accident.  Omar removes the case to federal court, arguing that Dan has been fraudulently joined because Lesley has no hope of prevailing against him.  If the reason that Lesley has no hope of prevailing against Dan is unique to Dan—i.e., he was not involved in the accident at all because he was visiting his mother in Florida when the accident

occurred—the court can infer that Lesley's only reason for suing Dan was to defeat diversity and prevent removal. If, however, the reason that Lesley has no possibility of prevailing against Dan would also defeat her claims against Omar—i.e., Lesley was one-hundred percent at fault (she was driving drunk, speeding, and swerving all over the road)—this does not demonstrate that Dan has been fraudulently joined. Rather, it demonstrates that Lesley's entire case is faulty. In other words, this argument is an attack on the merits of Lesley's case, not an attack on the propriety of Dan's joinder. *See Smallwood*, 385 F.3d at 574. And as such, it is a question for the state court to resolve.

Without the common defense rule, Omar could have the federal court rule on the merits of the case in a piecemeal fashion—first determining, at the jurisdictional stage, that Lesley's claims against Dan must fail because of her own negligence, and then dismissing Lesley's claims against Omar on the same basis at the merits stage. Allowing that would permit fraudulent joinder—itself a doctrine of questionable validity, *see Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, --- F. Supp. 2d ----, No. 11-23, 2011 WL 1979605, at *3-6 (E.D. Ky. May 20, 2011)—to work an even greater interference into the sovereignty of state courts. The common defense rule is, therefore, a leash that is necessary to prevent fraudulent joinder from expanding too far. Accordingly, the Court joins the Third, Fifth, Seventh, and Ninth Circuits in adopting it. Indeed, the Court has not found any circuits that have rejected the common defense rule when squarely presented with it.

Applying the common defense rule to this case is a simple matter. Suppose that SmithKline is correct that Dr. McGuire cannot be liable to Smith because he did not prescribe her Paxil during her first trimester and only a first-trimester prescription could have

caused her son's health problems. That same showing would also win the case for SmithKline because it would conclusively establish that Paxil did not cause the birth defects from which Smith's son suffers. Counsel for SmithKline admitted as much during oral argument on the motion to remand, acknowledging that, if the Court exercises jurisdiction over the case, it would eventually move for summary judgment on this ground. Therefore, because SmithKline's argument for why Smith's claims against Dr. McGuire must fail is "equally dispositive of all defendants," it cannot suffice to establish fraudulent joinder. *Smallwood*, 385 F.3d at 575. SmithKline's showing "manifestly [goes] to the merits of the action as an entirety, and not to the joinder." *Cockrell*, 232 U.S. at 153. As such, it is a question that rests squarely in the state court's jurisdiction.

If you step back for a moment, this result makes sense. Dr. McGuire is not just some non-diverse defendant with "no real connection with the controversy" whom Smith sued to keep her case in state court. *Wilson*, 257 U.S. at 97. Much to the contrary, he is a natural defendant in this case. If a plaintiff believes that a drug has injured her, there are at least two natural defendants—the company that manufactured the drug and the doctor who prescribed it. *See, e.g.*, *Collins ex rel. Collins v. Am. Home Prods. Corp.*, 343 F.3d 765, 768 (5th Cir. 2003) (plaintiffs sued both drug manufacturer and prescribing doctors); *Cordle*, 405 F. Supp. 2d at 802-03 (same); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, 352 F. Supp. 2d 533, 536 (E.D. Pa. 2004) (same); *Brown v. Bristol-Myers Squibb Co.*, No. 402CV301LN, 2002 WL 34213425, at *4 (S.D. Miss. Nov. 2, 2002) (same). SmithKline may very well be correct that Smith's claims against Dr. McGuire are weak— even hopelessly weak—because he did not prescribe her Paxil during her first trimester. But

that defense tends to show only that Smith's case as a whole is weak, not that she improperly joined Dr. McGuire for the sole purpose of defeating diversity. Thus, SmithKline's argument is an attack on the merits of Smith's entire case, not on the propriety of her joinder of Dr. McGuire. It therefore cannot suffice to establish fraudulent joinder. *See Smallwood*, 385 F.3d at 574.

**Attorney's Fees**

Smith asks the Court to award her attorney's fees under 28 U.S.C. § 1447(c). Such an award is only justified if SmithKline "lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Although the Court is remanding this case back to state court, it cannot say that SmithKline's second removal lacked an objectively reasonable basis. SmithKline gathered a great deal of evidence establishing that Smith did not receive a prescription for Paxil from Dr. McGuire during her first trimester. And although the Court ultimately based its decision on the common defense rule, that rule has not yet been specifically adopted by the Sixth Circuit. SmithKline's arguments in support of removal did not carry the day. But they were not objectively unreasonable. An award of attorney's fees under § 1447(c) therefore is not warranted.

## CONCLUSION

Because SmithKline has not succeeded in demonstrating that Dr. McGuire was fraudulently joined for the purpose of defeating diversity, this case lacks complete diversity, and this Court therefore lacks jurisdiction. It is **ORDERED** as follows:

(1)    Smith's motion to remand, R. 10, is **GRANTED**.

(2)     SmithKline's motion for leave to file an addendum to its supplemental brief,

        R. 25, is **GRANTED**.

(3)     This case is **REMANDED** back to state court.  All other pending motions are

        **DENIED** as moot and this case is **STRICKEN** from the Court's active

        docket.

This the 13th day of July, 2011.

Signed By:

*Amul R. Thapar* AT

United States District Judge